UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| EMMELY ASHLEY RAMIREZ, <br><br> *Plaintiff,* <br><br> – against – <br><br> COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, <br><br> *Defendant.* | **MEMORANDUM & ORDER** <br> 24-cv-08597 (NCM) |

**NATASHA C. MERLE**, United States District Judge:

Plaintiff Emmely Ashley Ramirez brings this action against defendant Commissioner of the Social Security Administration ("Commissioner") seeking judicial review of the Commissioner's decision denying plaintiff's application for disability insurance and supplemental security income benefits. *See* Compl. ¶¶ 1, 6, 9, ECF No. 1. Before the Court is plaintiff's motion for judgment on the pleadings ("Mot."), ECF No. 9-1, and the Commissioner's cross-motion for judgment on the pleadings ("Cross-Mot."), ECF No. 11-1. For the reasons stated below, plaintiff's motion is **DENIED**, and the Commissioner's cross-motion is **GRANTED**.

### BACKGROUND

Plaintiff applied for supplemental security income and disability insurance benefits on January 27, 2023, alleging a disability onset date of December 31, 2022. Certified Administrative Record ("R.") 194, 201, ECF No. 7; *see also* Joint Stipulation of

Relevant Facts ("Joint Stip.") 2, ECF No. 13.[1] The basis for plaintiff's application was depression and bipolar disorder. Joint Stip. 2. The Commissioner denied plaintiff's application on May 16, 2023, and again on September 8, 2023, after reconsideration. R. 111, 116, 126, 130; *see* Joint Stip. 2. Plaintiff requested a hearing, which was held telephonically on April 18, 2024 ("Hearing"), before an Administrative Law Judge ("ALJ"). R. 38, 133; *see* Joint Stip. 2.

Relevant to the parties' current dispute, the administrative record of plaintiff's benefits proceedings includes opinions from four medical sources: (1) Dr. Ferdinand Banez, plaintiff's treating psychiatrist; (2) Dr. Gregory Fabiano, a consultative examiner for the Commission; (3) Dr. T. Gilford, a state agency consultant; and (4) Dr. Anderson, another state agency consultant. *See* Joint Stip. 10–17; *see also* Mot. 2–9. In addition, the record before the ALJ included plaintiff's testimony at the Hearing. *See* R. 20–21, 48; *see also* Joint Stip. 4.

### A. Dr. Banez's Opinion

Dr. Banez is a board-certified psychiatrist with a specialization in addiction treatment. Joint Stip. 7 n.6. He first treated plaintiff in May 2021 and met with her about once or twice per month thereafter through the end of 2022, the alleged onset disability date. Joint Stip. 7. Dr. Banez continued to regularly treat plaintiff throughout 2023. *See* Joint Stip. 9–17; *see also* R. 522–28, 533–618. Treatment records from this period indicate that plaintiff chose to discontinue taking certain medications during and shortly after her pregnancy, *see* R. 554, Joint Stip. 8, but that Dr. Banez recommended—and

---

[1]    Throughout this Order, page numbers for the Certified Administrative Record ("R.") refer to the numbers found in the bottom right corner of each page, rather than the page numbers assigned by the Electronic Case Filing system ("ECF"). All other page numbers for docket filings refer to the page numbers assigned by ECF.

plaintiff was treated with—psychotherapy, *see* R. 556, 581. Despite discontinuing her medications, Dr. Banez repeatedly assessed that plaintiff's symptoms were "stable" throughout her pregnancy and thereafter. R. 548, 556, 564, 573, 581, 590, 613, 617; *see also* Joint Stip. 10.

On October 12, 2023, Dr. Banez completed a "medical source statement" in connection with plaintiff's benefits proceedings. *See* R. 529, 532. The statement indicates that Dr. Banez identified plaintiff as suffering from the following symptoms: appetite disturbance, sleep disturbance, mood disturbance, emotional lability, panic attacks, pervasive loss of interest, paranoia or inappropriate suspiciousness, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, decreased energy, intrusive recollections of a traumatic experience, and generalized persistent anxiety. R. 529. Dr. Banez opined that plaintiff would be expected to be absent from work about three times per month due to her symptoms. R. 530. He further opined that plaintiff's ability to "understand, remember, and carry out instructions," as well as her ability to "respond appropriately to supervision, co-workers, and work pressure in a work setting," would be affected by her impairments. R. 530–31. Dr. Banez concluded that plaintiff had "marked" limitation in sustaining concentration, as well as understanding and remembering information. *See* R. 530–31; *see also* R. 24; Joint Stip. 16. Dr. Banez also concluded that plaintiff had "extreme" limitation in working around others and a "moderate" limitation in completing a normal workday. *See* R. 530–31; *see also* R. 24; Joint Stip. 16.

### B. Dr. Fabiano's Opinion

Dr. Fabiano is an examining consultant for the Commission with a Ph.D. in psychology. *See* R. 520; *see also* Joint Stip. 10. On April 17, 2023, Dr. Fabiano conducted

3

a psychiatric evaluation of plaintiff in connection with her benefits proceedings. *See* R. 516; Joint Stip. 10. In his consultative examination report, Dr. Fabiano found that plaintiff had a "mild" limitation in her ability to understand, remember, or apply simple directions and instructions. R. 518–19. He further found that plaintiff appeared to have "moderate" limitation in her ability to understand, remember, and to apply complex directions and instructions, to interact adequately with supervisors, co-workers, and the public, and to sustain concentration and perform tasks at a consistent pace. R. 519. However, Dr. Fabiano opined that plaintiff did not "appear to have evidence of limitation" in her ability to use reason and judgment, to make work-related decisions, and to sustain an ordinary routine and regular attendance at work. R. 519. Dr. Fabiano concluded that the results of his examination of plaintiff "appear[ed] to be consistent with psychiatric problems," but nevertheless "d[id] not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." R. 519.

### C. Dr. Gilford's Opinion

Dr. Gilford is a state agency consultant with a specialty in psychology. *See* R. 80; *see also* Joint Stip. 12. On May 2, 2023, Dr. Gilford examined records and evidence in plaintiff's file in connection with her benefits proceedings. *See* R. 75; *see also* Joint Stip. 12. Dr. Gilford concluded that the "totality of the evidence" demonstrated that plaintiff had a moderate impairment in managing emotions, and, accordingly, "may have difficulty adapting to change and also in understanding and carrying out detailed and complex instructions." R. 75. Dr. Gilford found that plaintiff had moderate mental limitations in her ability to (1) "understand, remember, or apply information;" (2) "interact with others;" (3) "concentrate, persist, or maintain pace," and (4) "adapt or manage oneself." (collectively, "Paragraph B Criteria"). R. 76. Nevertheless, Dr. Gilford concluded that

4

plaintiff was "capable of performing simple work and is able to understand, remember, and carry out simple instructions, and maintain a reasonable pace." R. 75.

### D. Dr. Anderson

Dr. Anderson is a state agency psychiatry consultant. *See* Joint Stip. 14. On September 7, 2023, Dr. Anderson examined records and evidence in plaintiff's file in connection with her benefits proceedings, including updated treatment records since Dr. Gilford's May 2023 finding. *See* Joint Stip. 14; *see also* R. 97. Dr. Anderson concluded that the evidence demonstrated that plaintiff had a moderate impairment in managing emotions, and therefore might have difficulty adapting to change, and understanding and carrying out detailed instructions. R. 95. Dr. Anderson indicated that plaintiff had moderate limitations across three of the Paragraph B Criteria, but that plaintiff only had a "mild" limitation in her ability to "adapt or manage oneself." R. 96. Dr. Anderson concurred in Dr. Gilford's opinion that plaintiff was capable of performing simple work, and that she is able to understand, remember, and carry out simple instructions, and maintain a reasonable pace. R. 95.

### E. Hearing Testimony

At the Hearing, while represented by counsel, plaintiff testified that she suffered from anxiety, paranoia, bipolar disorder, and depression. R. 41, 53. She further testified that she took medication and saw a therapist to treat her symptoms. *See* R. 54. Plaintiff explained that her psychiatric problems made it difficult to get through a full work week because having "other people around [her]" was challenging because she "think[s] they're talking about [her]" and she is "afraid[] [that] something is going to happen to [her]." R. 55. She testified that she had problems with her memory because she sometimes "forgets things" because she does not remember where "[she] put them." R. 57. She testified that

5

she would "have problems" listening to instructions in a workplace, and that she has difficulty understanding things when they're explained to her. R. 57. Plaintiff also testified that she was the primary caretaker for both her children, that she would take a "medical transportation" car service to get around, and that she cooks and cleans for her family. R. 59–60.

### F. Procedural Background

On May 6, 2023, the ALJ issued a written opinion finding that plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from December 31, 2022, through the date of th[e] decision." R. 14, 17–18. Plaintiff requested review of the ALJ's decision by the Social Security Administration Appeals Council, which declined review. R. 1–3. Plaintiff filed this appeal of the Commissioner's decision in December 2024. *See generally* Compl. Plaintiff moved for judgment on the pleadings pursuant to Rule 12(c); the Commissioner filed a cross-motion for the same relief. *See* Mot.; Cross-Mot.

### STANDARD OF REVIEW

A district court reviewing a final decision of the Commissioner is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[2] 42 U.S.C. § 405(g); *see also* Fed. R. Civ. P. 12(c) (allowing courts to enter a judgment on the pleadings). Nonetheless, federal judicial review is "limited." *Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 154 (2d Cir. 2024). Reviewing courts "do not substitute" their own "judgment for the agency's" or review the record de novo. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

---

[2]    Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

Instead, "[w]e conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Rubin*, 116 F.4th at 154.

In conducting this review, courts must determine (1) "whether the correct legal standards were applied," and (2) "whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see also Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2002). Whether the record contains "substantial evidence" depends on whether "a reasonable mind might accept" the evidence "as adequate to support" the ALJ's determination. *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019); *see id.* at 102 (explaining that "[t]he phrase substantial evidence is a term of art used throughout administrative law to describe how courts are to review agency factfinding"). The "threshold for such evidentiary sufficiency is not high"; it requires only that the record contain "more than a mere scintilla" of evidence. *Id.* at 103. The court must uphold the Commissioner's conclusion so long as it is supported by a "rational interpretation" of the evidence. *Rubin*, 116 F.4th at 155. However, courts must still "examine contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.*

"Before determining whether the Commissioner's final decision is supported by substantial evidence[,] the court must first be satisfied that the ALJ completely developed the administrative record." *Kelly v. Comm'r of Soc. Sec.*, No. 20-cv-05318, 2024 WL 5120051, at *9 (E.D.N.Y. Dec. 16, 2024). The ALJ has a "well-established" obligation to investigate and develop the record, even where a claimant is counseled—this "has been described as a bedrock principle of Social Security law." *Id.* An ALJ can take steps to further develop the record by, inter alia, "re-contacting the treating physician, requesting

additional records, arranging for a consultative examination, or seeking information from others." *Bryant v. Comm'r of Soc. Sec.*, No. 20-cv-06933, 2022 WL 17540581, at *13 (S.D.N.Y. Nov. 21, 2022), *report and recommendation adopted*, 2022 WL 17540540, at *1 (Dec. 6, 2022) (citing 20 C.F.R. §§ 404.1520b, 416.920b). Where the presiding ALJ did not apply the correct legal standard or sufficiently develop the record, a court may remand the case for further proceedings. *See Sczepanski v. Saul*, 946 F.3d 152, 161–62 (2d Cir. 2020); *Daniels v. Kijakazi*, 617 F. Supp. 3d 180, 195 (S.D.N.Y. 2022).

## DISCUSSION

### I.    Statutory and Regulatory Disability Benefit Requirements

The Social Security Administration administers social security disability insurance benefits to eligible applicants pursuant to the Social Security Act ("SSA"). *See generally* 42 U.S.C. § 301 et. seq. To secure benefits, an applicant must demonstrate, among other things, that he is disabled. For purposes of social security disability insurance benefits, disability is defined as an impairment or combination of impairments that renders an individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The Commissioner, acting through a presiding ALJ, assesses whether an applicant's impairments or combination of impairments meets the statutory definition of disability by undertaking a "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(4). The Commissioner only advances to the next step of the evaluation process where the determination of an applicant's disability status cannot be made at that stage. *Id.*

The first step in this process is to evaluate the applicant's current work activity; a disability determination will be denied where an applicant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At the second step, the Commissioner "considers the medical severity of the claimant's impairment or combined impairments." *Rubin*, 116 F.4th at 147 (citing 20 C.F.R. § 404.1520(a)(4)(ii)). At the third step, the Commissioner considers whether the applicant's impairment "meets or equals" one of the listings in Appendix 1 of Part 404, Subpart P ("Listed Impairment"). 20 C.F.R. § 404.1520(a)(4)(iii). If the applicant's impairments do not meet or equal a Listed Impairment, the Commissioner determines the claimant's residual functional capacity ("RFC"), which is the claimant's ability to function in a workplace despite medical limitations "based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e).

If the claimant suffers from mental impairments, the Commissioner "appl[ies] a special technique at the second and third steps of the five-step framework." *Kelsey v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 437, 445 (W.D.N.Y. 2018) (quoting *Koler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). Specifically, the Commissioner's regulations require that the ALJ determine whether the claimant has medically determinable mental impairments and, if so, "rate the degree of functional limitation resulting from the impairment(s)" across "four broad functional areas" specified in the Commissioner's regulations. *Kohler*, 546 F.3d at 226 (citing 20 C.F.R. § 404.1520a(b)(2)). The so-called Paragraph B Criteria include: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. § 404.1520a(c)(4). The ALJ rates the degree of limitation in each functional area on a five-point scale: none, mild, moderate, marked,

and extreme. *Kathryn A. v. Comm'r of Soc. Sec.*, No. 22-cv-01392, 2023 WL 8596012, at *7 (D. Conn. Dec. 12, 2023) (citing 20 C.F.R. § 404.1520a(c)(4)). In order to "satisfy the Paragraph B [C]riteria, a claimant's mental disorder must result in extreme limitation of one, or marked limitation of two, of the four criteria." *Monica L. v. Comm'r of Soc. Sec.*, No. 19-cv-01435, 2021 WL 630909, at *4 (W.D.N.Y. Feb. 18, 2021).

At the fourth step, the ALJ assesses whether the claimant can perform past relevant work when considering the claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the fifth and final step is to consider whether an applicant, given her RFC, age, education, and work experience, can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). The claimant "bears the burden of proof in the first four steps of the sequential inquiry[.]" *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). However, at step five, "the burden shifts, to a limited extent, to the Commissioner to show that other work exists in significant numbers in the national economy that the claimant can do." *Rubin*, 116 F.4th at 148.

## II.    The ALJ's Determination

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 31, 2022, the alleged disability onset date. R. 19. At step two, the ALJ found that plaintiff had the following severe impairments: bipolar disorder and anxiety disorder. R. 19.

At step three, the ALJ found that plaintiff's combination of impairments did not meet or medically equal the severity of a Listed Impairment, nor that plaintiff's impairments satisfied the Paragraph B Criteria. R. 20–21. In reaching this determination the ALJ turned to the record evidence, specifically Dr. Fabiano's consultative examination and the Hearing testimony, and found that plaintiff had "moderate" limitations across

each dimension of the Paragraph B Criteria, but that her "mental impairments d[id] not cause at least two marked limitations or one extreme limitation." R. 21. Specifically, the ALJ noted that plaintiff "reported that she could go to doctor appointments, use public transportation, manage money, use a smartphone, shop, and prepare meals." R. 20. The ALJ observed that the record evidence demonstrated that plaintiff was "able to provide information about h[er] health, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, and respond to questions from medical providers." R. 20. The ALJ found that the medical evidence showed that plaintiff had "a good rapport with providers, was described as pleasant and cooperative, had good interactions with non-medical staff, and appeared comfortable during appointments." R. 21. Finally, the ALJ noted that plaintiff provided care for her grandparents and her children. *See* R. 21. Accordingly, the ALJ concluded that plaintiff's "mental impairments d[id] not cause at least two marked limitations or one extreme limitation," and thus "the [P]aragraph B [C]riteria [we]re not satisfied." R. 21.

Then, after considering all the evidence in the record, the ALJ determined that plaintiff retained the RFC to perform a full range of work with certain "nonexertional limitations," including that plaintiff: cannot perform at a production rate pace where tasks must be completed within strict timeframes; cannot perform tandem tasks; and cannot interact with the general public. R. 21. The ALJ concluded that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 22.

At step four, the ALJ found that plaintiff could not perform her past relevant work as a cashier or home attendant because "[t]he mental demands of the claimant's past relevant work exceed the residual functional capacity." R. 25. At step five, after considering plaintiff's vocational profile and RFC, the ALJ determined that plaintiff could perform other work existing in significant numbers in the national economy, including representative occupations such as kitchen helper/dishwasher, stocker/store laborer, and commercial cleaner. R. 26. Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the SSA from December 31, 2022, through the date of the decision. R. 26.

### III.    The Court's Analysis of the ALJ's Determination

Plaintiff appeals the ALJ's decision on two grounds. First, plaintiff contends that the ALJ's evaluation of the medical opinion evidence was "fatally flawed" and unsupported by substantial evidence. Mot. 4. Specifically, plaintiff argues that the ALJ committed legal error in weighing the medical opinion evidence because she (1) "did not evaluate the supportability of the opinions from Drs. Banez and Fabiano," Mot. 4; (2) rejected Drs. Banez and Fabiano's opinions as inconsistent with plaintiff's activities of daily living, Mot. 7; and (3) found opinions from non-examining medical consultants to be persuasive, Mot. 8. Second, plaintiff argues that the ALJ's evaluation of plaintiff's subjective statements concerning her symptoms was improper and unsupported by substantial evidence. Mot. 8–11. In response, the Commissioner contends that substantial evidence supports both the ALJ's evaluation of the medical opinion evidence and the ALJ's evaluation of plaintiff's subjective statements concerning her symptoms. Cross-Mot. 8, 19.

For the reasons stated below, the Court finds that the ALJ's assessment of the medical opinion evidence and plaintiff's subjective statements concerning her symptoms was supported by substantial evidence and consistent with appropriate legal standards, and, thus, remand is not warranted.

### A.  *The ALJ Properly Evaluated the Medical Opinion Evidence*

In evaluating medical opinions an ALJ must consider, among other factors: supportability, consistency, the author's relationship with the claimant, and the author's specialization. *See* 20 C.F.R. § 404.1520c(c)(1)–(5). The "most important" factors are supportability and consistency. *Rubin*, 116 F.4th at 148. Supportability of a medical opinion concerns "how well a medical source supported and explained their opinion." *Daniels*, 617 F. Supp. 3d at 189. Consistency of a medical opinion concerns, through "an all-encompassing inquiry[,] . . . how well a medical source is supported, or not supported, by the entire record[.]" *Id.* Put differently, supportability refers to the "objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion." *Villier on behalf of N.D.D.R. v. Comm'r of Soc. Sec.*, No. 23-cv-893, 2024 WL 2174236, at *2 (2d Cir. May 15, 2024) (summary order) (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency, on the other hand, "refers to how consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other sources[.]" *Id.* (quoting 20 C.F.R. § 404.1520c(c)(2)).

The ALJ must "explain how [s]he considered supportability and consistency as applied to each medical source's opinion in h[er] determination or decision," and may not "give any specific evidentiary weight" to any particular opinion by default. *Rubin*, 116 F.4th at 148. Although an "explanation need not be exhaustive," the Court must be able to "glean the rationale of an ALJ's decision." *Jaret B. v. Comm'r of Soc. Sec.*, No. 22-cv-

00896, 2024 WL 1014051, at *7 (W.D.N.Y. Mar. 8, 2024) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). An ALJ's "failure to properly consider and apply the requisite factors is grounds for remand." *Russ v. Comm'r of Soc. Sec.*, 582 F. Supp. 3d 151, 161 (S.D.N.Y. 2022). Similarly, if an ALJ "bases her explanation upon a misreading of the record, remand is required." *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-cv-04630, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted*, 2021 WL 134945 (Jan. 14, 2021).

Still, it is the ALJ's "role to weigh medical opinion evidence and to resolve conflicts in that evidence." *Milliken v. Saul*, No. 19-cv-09371, 2021 WL 1030606, at *8 (S.D.N.Y. Mar. 17, 2021) (first citing *Cage*, 692 F.3d at 122; and then citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)). Thus, "it is not the [district] [c]ourt's function to reweigh the evidence that was before the ALJ." *Mary M. v. Comm'r of Soc. Sec.*, No. 20-cv-01594, 2022 WL 823850, at *11 (N.D.N.Y. Mar. 17, 2022). Instead, the Court's inquiry is limited to whether the ALJ applied the correct legal standards and whether substantial evidence supported her determination. *See Lee G. v. Comm'r of Soc. Sec.*, No. 19-cv-01558, 2021 WL 22612, at *5 (N.D.N.Y. Jan. 4, 2021) ("[T]he Court must not re-weigh opinion evidence so long as there is substantial evidence to support the ALJ's determination[.]"). The Second Circuit has cautioned that "[s]ubstantial evidence is a very deferential standard of review." *Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60, 70 (2d Cir. 2025). "Indeed, under the substantial evidence standard, the [Commissioner's] determination must be upheld if it is rational and supported by the record, even if the evidence is susceptible to more than one rational interpretation." *Id.*; *see also Kimberly B. v. Comm'r of Soc. Sec.*, No. 22-cv-00350, 2023 WL 3318488, at *11 (N.D.N.Y. May 9, 2023) (explaining that where "the ALJ's conclusions find reasonable support in the record,

courts will defer to the ALJ's resolution regarding the appropriate weight to be afforded to various medical opinions").

Here, plaintiff argues that the ALJ erred in weighing the medical opinion evidence in at least three ways. First, the ALJ "did not evaluate the supportability of the opinions from Drs. Banez and Fabiano." Mot. 4. Specifically, plaintiff contends that the ALJ "failed to provide any meaningful discussions of the supportive explanations from the treating psychiatrist and examining psychologist." Mot. 6. Plaintiff further contends that the ALJ failed to evaluate the consistency of the two opinions, including "the consistency between the opinions" from Drs. Banez and Fabiano about plaintiff's limitations with respect to performing work. *See* Mot. 7. Second, plaintiff argues that the ALJ erred "to the extent she rejected opinions from Drs. Banez and Fabiano because Ms. Ramirez is able to . . . engage in some activities of daily living." Mot. 7. Third, plaintiff claims that the ALJ committed error in finding the opinions from non-examining consultants to be more persuasive than the opinions of treating or examining medical sources. *See* Mot. 8.

The Court addresses the ALJ's analysis of the medical opinions of Dr. Banez, Dr. Fabiano, and the non-examining consultants, in turn.

### i. Dr. Banez

Dr. Banez—plaintiff's treating psychiatrist—opined in his treating source statement that plaintiff had "marked" limitation in sustaining concentration, as well as understanding and remembering information. R. 24; *see also* Joint Stip. 16. Dr. Banez also opined that plaintiff had "extreme" limitation in working around others and a "moderate" limitation in completing a normal workday. R. 24; *see also* Joint Stip. 16. The ALJ found that Dr. Banez's opinion "was not persuasive" because it (1) was not supported by his own treatment records; and (2) was not consistent with the record as a whole,

including plaintiff's "routinely normal mental status examinations and her ability to conduct activities of daily living, self-care, and childcare." R. 24.

The Court finds no legal error in the ALJ's analysis. For one, as her discussion makes clear, the ALJ did reference reasons why she found that Dr. Banez's opinion was neither supported nor consistent.[3] *See* R. 24. Namely, the ALJ explained that Dr. Banez's medical opinion was not supported by his "own treatment records containing largely normal mental status examinations." R. 24. Thus, plaintiff's contention that the ALJ "did not evaluate the supportability of the opinion[] from Dr[]. Banez," Mot. 4, is plainly without merit. *See Scott A. W. v. Comm'r of Soc. Sec.*, No. 23-cv-00131, 2024 WL 2023238, at *8 (N.D.N.Y. May 6, 2024) ("Here, the ALJ explicitly referenced the supportability factor in accordance with the regulations. Therefore, unlike the case [the] [p]laintiff references where the ALJ does not mention supportability at all, this is not a case in which the ALJ has completely failed to provide any indication that she considered the supportability factor or failed to provide any explicit analysis about that factor.").

Perhaps recognizing that the ALJ did in fact evaluate the supportability of Dr. Banez's opinion, plaintiff also argues that the ALJ "failed to provide meaningful discussion of the supportive explanations" for Dr. Banez's opinion and failed to "address evidence related to the supportability of the medical source[]." Mot. 4, 6. In marshalling this argument plaintiff relies on the fact that Dr. Banez "specified his opinions were

---

3    The Commissioner points out that the ALJ "reversed the regulatory terms in the opinion analysis, using the term consistency when discussing supportability and vice versa." Cross-Mot. 10 n.2. The Commissioner also correctly points out that because the ALJ's rationale can be gleaned from her discussion, the inversion of terms is a mere typographical error that does not warrant remand. *See Heitz v. Comm'r of Soc. Sec.*, 201 F. Supp. 3d 413, 425 (S.D.N.Y. 2016) (holding that the ALJ's typographical error did not warrant remand where although there were inconsistencies in the ALJ's opinion, the opinion as a whole showed that the error was typographical and not substantive).

16

based" on evidence of plaintiff's symptoms such as sleep and mood disturbance, recurrent panic attacks, and generalized persistent anxiety. Mot. 4. Plaintiff appears to be referring to the first page of Dr. Banez's source statement form, in which Dr. Banez checked off several boxes identifying a host of plaintiff's symptoms. *See* Mot. 4 (citing R. 529–30).

This argument is unavailing for several reasons. To begin, "[t]he ALJ was not required to mention or discuss every single piece of evidence in the record." *Lewis v. Comm'r of Soc. Sec.*, No. 00-cv-01225, 2005 WL 1899399, at *6 (N.D.N.Y. Aug. 2, 2005) (collecting cases); *see Christopher W. v. Comm'r of Soc. Sec.*, No. 23-cv-01581, 2025 WL 1033788, at *4 (N.D.N.Y. Feb. 11, 2025) ("An ALJ's assessment of supportability need not be overburdensome, . . . [n]or need the ALJ discuss every piece of evidence in the record in assessing the supportability of a medical opinion."), *report and recommendation adopted*, 2025 WL 892687 (Mar. 24, 2025). More importantly, the ALJ's explanation of why she found Dr. Banez's opinion to be unsupported illustrates why the symptoms referenced in the first page of the source statement carried little weight in supporting his ultimate opinion: Dr. Banez's own treatment records told a different story. Specifically, treatment records from June 3, 2023 to November 9, 2023 indicate that Dr. Banez examined plaintiff on at least nine occasions. R. 533–618. And in each appointment Dr. Banez examined plaintiff's "mental status" in which her: (1) "attitude toward the examiner" was found to be cooperative; (2) "thought process" was assessed to be "goal directed;" and (3) attention and concentration, memory, cognition, and judgment were all determined to be "within normal limits." *See* R. 546–47, 555, 563, 571–72, 579–80, 589, 598, 607–08, 616.

What's more, the exact same day that Dr. Banez filled out the treating source statement form indicating that plaintiff had "marked" loss in maintaining attention and

17

concentration, and understanding and remembering detailed instructions, *see* R. 531, was the same date of one of these appointments in which Dr. Banez conducted a mental examination of plaintiff and found that her attention and concentration, memory, and cognition were all "within normal limits," *see* R. 598. On this record, the Court cannot conclude that the ALJ's determination that Dr. Banez's opinion was unsupported by his own treatment records—and, thus, his opinion was not persuasive—is not a "rational interpretation" of the evidence. *Rubin*, 116 F.4th at 155; *see J'zon M. v. Comm'r of Soc. Sec.*, No. 23-cv-00644, 2024 WL 2889098, at *6 (W.D.N.Y. June 10, 2024) ("An ALJ has the discretion to find a medical opinion unpersuasive where it is contradicted by the source's own findings."); *Jesse L. v. O'Malley*, No. 24-cv-08219, 2025 WL 2169562, at *10 (S.D.N.Y. July 31, 2025) (explaining that the ALJ applied the correct legal principles and cited substantial evidence in support of his medical opinion evaluations because "[w]here the ALJ found a medical source opinion not persuasive, the ALJ explained why, referring to inconsistencies in the medical source's own findings and lack of support in the record"); *see also Negron v. Colvin*, No. 15-cv-02515, 2017 WL 1194470, at *7 (E.D.N.Y. Mar. 31, 2017) ("The Second Circuit has repeatedly held that ALJs may give a treating source's medical opinion less weight where it contradicts their own treatment notes.") (collecting cases).

To the extent plaintiff argues that the ALJ did not provide "meaningful" discussion of evidence that supported Dr. Banez's opinion, Mot. 6—"the relevant question is not whether there is substantial evidence to support the claimant's view; instead, the Court must decide whether substantial evidence supports *the ALJ's decision*," *Ingrassia v. Colvin*, 239 F. Supp. 3d 605, 623 (E.D.N.Y. 2017) (quoting *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013)) (emphasis in original). Moreover, the ALJ's "explanation need not

18

be exhaustive: it is enough if the Court can glean the rationale of an ALJ's decision." *Chance v. Comm'r of Soc. Sec.*, No. 18-cv-06043, 2019 WL 2123565, at *6 (W.D.N.Y. May 15, 2019); *see also Mongeur*, 722 F.2d at 1040 ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."). And here, the ALJ provided a sufficient explanation to glean her rationale as to why she found Dr. Banez's opinion was not supported: his opinions were "inconsistent with the record including Dr. Banez's own treatment records containing largely normal mental status examinations." R. 24. This is sufficient to pass the "very deferential" substantial evidence standard of review. *See Ingrassia*, 239 F. Supp. 3d at 623 (explaining that the "substantial evidence standard is very deferential to the Commissioner, and allows courts to reject the ALJ's findings only if a reasonable factfinder would *have to conclude otherwise*," and further explaining that the "deferential standard applies not only to factual determinations, but also to inferences and conclusions drawn from such facts") (emphasis in original).

Plaintiff's arguments directed at the ALJ's determination that Dr. Banez's opinion was not consistent with the record fare no better. *See* Mot. 6–7. Plaintiff contends that the ALJ erred in her analysis of the consistency of Dr. Banez's opinion because she "failed to recognize" the consistency of the opinion with treatment records documenting plaintiff's symptoms, *see* Mot. 6, and because she "erred to the extent she rejected [the] opinion[] from Dr[]. Banez . . . because [plaintiff] is able to engage in some activities of daily living," Mot. 7 (citing R. 24). The ALJ observed that Dr. Banez's opinion was inconsistent with the record, "including the claimant's routinely normal mental status

19

examinations and her ability to conduct activities of daily living, self-care, and childcare." R. 24. In that same explanation, the ALJ also referred to her previous discussion detailing why plaintiff's mental impairments did not satisfy the Paragraph B Criteria. R. 24 (citing R. 20–21).

Again, the Court finds no legal error with this analysis or conclusion. As previously discussed, the ALJ was not obligated to mention every piece of evidence that may have been consistent with Dr. Banez's opinion.[4] *See Lewis*, 2005 WL 1899399, at *6; *see also Villier*, 2024 WL 2174236, at *3 ("To the extent [the plaintiff] faults the ALJ for failing to explicitly discuss the consistency of each medical opinion with specific other opinions, an ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's decision."). In any event, the ALJ's explanation as to why Dr. Banez's opinion about the limiting effects of plaintiff's symptoms was inconsistent with the record demonstrates why evidence of the fact of plaintiff's symptoms did not alter the ALJ's conclusion—plaintiff's "routinely normal mental status examinations and her ability to conduct activities of daily living, self-care, and children" suggested otherwise. *See* R. 28.

For instance, when asked in the source statement to "describe[e] the clinical findings . . . which demonstrate[d] the severity of [plaintiff's] mental impairment and symptoms," Dr. Banez referenced the first page of the statement in which he identified

---

[4]    For this reason, plaintiff's argument that the ALJ "failed to recognize the consistency between the opinions from Drs. Banez and Fabiano," similarly fails to move the needle. Mot. 6. Moreover, as set out more fully below, this argument is unavailing for the independent reason that "Dr. Fabiano's opinion contradicts Dr. Banez's opinion." Cross-Mot. 13. Namely, Dr. Fabiano concluded that plaintiff only had moderate limitations, and that none of her symptoms "appear[ed] to be significant enough to interfere with the claimant's ability to function on a daily basis." R. 519.

plaintiff's symptoms, diagnoses, and treatment regimen. *See* R. 529–30. And in that source statement Dr. Banez opined that plaintiff had "extreme" loss, defined as "[c]omplete loss of ability in the named activity," in her ability to use public transportation. R. 530–31. But Dr. Fabiano, who also considered plaintiff's symptoms, diagnoses, and treatment regimen, indicated in his consultative examination that plaintiff reported that she "occasionally takes public transportation." R. 518. This aligned with plaintiff's testimony at the Hearing that she would take a "medical transportation" car service to get around. R. 59. Similarly, Dr. Banez's conclusion that plaintiff had "marked" loss in her ability to "interact appropriately with the public," R. 531, was inconsistent with the findings of Drs. Gilford, Anderson, and Fabiano, none of whom found that plaintiff had anything more than "moderate" loss in her ability to interact with the public. *See* R. 89 (Dr. Gilford finding that plaintiff had a "moderate" limitation in her ability to interact with the public); R. 98 (Dr. Anderson finding that plaintiff was "not significantly limited"); *see also* R. 517 (Dr. Fabiano finding plaintiff's "demeanor and responsiveness . . . cooperative[,] [and] [m]anner of relating, social skills, and overall presentation adequate").

Moreover, the ALJ underscored the inconsistency of Dr. Banez's opinion that plaintiff had marked loss in her capacity to maintain attention and concentration and extreme loss in her capacity to get along with coworkers and peers by referencing her previous discussion of the Paragraph B Criteria, *see* R. 24 (citing R. 20–21), in which the ALJ pointed out that evidence in the record showed that plaintiff "had a good rapport with providers, was described as pleasant and cooperative, had good interactions with non-medical staff," and was able to "follow instructions from healthcare providers,

21

comply with treatment outside of a doctor's office or hospital," "[and] manage money." R. 20–21.

Plaintiff's suggestion that the ALJ erred in finding Dr. Banez's opinion to be inconsistent with plaintiff's ability to engage in activities of daily living is without merit. *See* Mot. 7. "There is nothing inherently wrong with an ALJ considering a plaintiff's activities of daily living[,]" in fact, "the regulations encourage ALJs to consider them." *Debra Lanette P. v. Comm'r of Soc. Sec.*, No. 20-cv-01634, 2022 WL 1063169, at *14 (N.D.N.Y. Apr. 7, 2022) (citing 20 C.F.R. § 404.1529(c)(3)(i)); *see also Denver v. Berryhill*, No. 19-cv-01312, 2020 WL 5261194, at *15 (S.D.N.Y. Jan. 27, 2020) ("Because self-reported activities constitute factual evidence of the type that an ALJ may consider when determining the appropriate weight to give a treating physician's opinion, the ALJ reasonably relied on these activities of daily living . . . to rebut the opinions provided by [the] [p]laintiff's treating sources."); *Grimmer v. Comm'r of Soc. Sec.*, No. 18-cv-01155, 2019 WL 6490841, at *5 (W.D.N.Y. Dec. 3, 2019) ("The ALJ also properly considered that [the treating physician's] opinion was inconsistent with, and contradicted by, [the] [p]laintiff's activities of daily living."). Although plaintiff is of course correct that "[a]n individual need not vegetate in a dark room to be found disabled," Mot. 7, that is neither what the ALJ concluded nor the question before the Court. Instead, the question is "whether the ALJ considered [daily] activities absent consideration of other evidence in the record such as treatment records, medical source statements, or contradictory testimony." *Debra*, 2022 WL 1063169, at *14. And as set forth above, the ALJ considered those activities with, and found the findings contradicted, Dr. Banez's treatment records and medical source statement. *See* R. 24.

Accordingly, the Court finds that substantial evidence supported the ALJ's evaluation of Dr. Banez's opinion.

ii. Dr. Fabiano

Dr. Fabiano—a examining consultant for the Commission—opined in his consultative examination that plaintiff appeared to have "mild" limitation in her ability to understand, remember, or apply simple directions and instructions. R. 518–19. He further opined that plaintiff appeared to have "moderate" limitation in her ability to understand, remember, to apply complex directions and instructions, to interact adequately with supervisors, co-workers, and the public, and to sustain concentration and perform tasks at a consistent pace. R. 519. However, Dr. Fabiano also opined that plaintiff did not "appear to have evidence of limitation" in her ability to use reason and judgment, to make work-related decisions, and to sustain an ordinary routine and regular attendance at work. R. 523. Dr. Fabiano concluded that the results of his examination of plaintiff "appear[ed] to be consistent with psychiatric problems," but nevertheless "d[id] not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." R. 519. The ALJ found Dr. Fabiano's opinion to be "partially persuasive as it is partially consistent with the medical evidence." R. 24. The ALJ clarified, however, that the opinion was inconsistent with the record to the extent it suggested anything "more than moderate limitations" in plaintiff's ability to function. *See* R. 24; *see also* Cross-Mot. 16 n.5.

Plaintiff advances largely the same arguments as to why the ALJ erred in weighing Dr. Fabiano's opinion as she raises with respect to the ALJ's analysis of Dr. Banez's opinion. Namely, that the ALJ did not adequately evaluate the supportability or consistency of Dr. Fabiano's opinion. *See* Mot. 4, 6–7. The Court's prior reasoning applies

with equal force to the ALJ's evaluation of Dr. Fabiano's opinion and, thus, remand is not warranted on this basis. Specifically, the ALJ assessed the supportability of Dr. Fabiano's opinion by referencing her Paragraph B discussion in which she found that certain of Dr. Fabiano's findings about plaintiff's limitations were belied by other findings he made during his examination with respect to plaintiff's daily activities. *See* R. 24; *compare* R. 519 ("[Plaintiff] appears to have moderate limitation in ability to . . . interact adequately with supervisors, co-workers, and the public,") *with*, R. 517 ("Demeanor and responsiveness to questions cooperative. Manner of relating, social skills, and overall presentation adequate."). And in the same vein, the ALJ assessed the consistency of Dr. Fabiano's opinion by observing that, to the extent his opinion suggested "profound limitations," such limitations were inconsistent with the record, including plaintiff's ability to "conduct activities of daily living, self-care, and childcare[.]" R. 24. Although plaintiff may disagree with how the ALJ chose to weigh Dr. Fabiano's opinion, "plaintiff's disagreement with how the ALJ weighed that opinion and other evidence is not sufficient for remand." *John D. A. v. Comm'r of Soc. Sec.*, No. 19-cv-00778, 2020 WL 6916751, at *8 (W.D.N.Y. Nov. 24, 2020) (citing *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012)); *see also Lakiesha P. v. Comm'r of Soc. Sec.*, No. 24-cv-00306, 2025 WL 3506959, at *8 (W.D.N.Y. Dec. 8, 2025) ("Simply put, [a] [p]laintiff's disagreement with the ALJ's resolution of conflicting evidence is not grounds for remand.").

Moreover, the ALJ's analysis of Dr. Fabiano's opinion does not warrant relief for another, independent reason: any errors in weighing Dr. Fabiano's opinion were harmless. The Second Circuit has "reaffirmed that a remand is unnecessary where, notwithstanding the ALJ's errors in weighing the evidence or applying the law, proper consideration would not have changed the outcome." *Amy T. v. Comm'r of Soc. Sec.*,

24

No. 18-cv-01462, 2020 WL 564694, at *8 (S.D.N.Y. Feb. 5, 2020) (collecting cases); *see also Vargas v. Comm'r of Soc. Sec.*, No. 16-cv-00484, 2017 WL 2838165, at *8 (N.D.N.Y. June 29, 2017) ("Because the outcome would not change in the absence of the ALJ's errors in weighing the opinion evidence, those errors are harmless and do not necessitate remand."); *Sherry L. v. Comm'r of Soc. Sec.*, No. 20-cv-01432, 2022 WL 2180159, at *6 (W.D.N.Y. June 16, 2022) ("[F]ailure to discuss and/or weigh a medical opinion is not per se remandable error but may be found harmless error.").

Here, Dr. Fabiano ultimately opined that although plaintiff had certain mild and moderate limitations stemming from her mental health impairments, none of them "appear[ed] to be significant enough to interfere with the claimant's ability to function on a daily basis." R. 519. This opinion was largely consistent with the ALJ's finding that plaintiff had moderate limitations across the Paragraph B Criteria, *see* R. 20–21, but that she nevertheless had the RFC to perform a full range of work with the limitations that she could not "perform at a production rate pace where task must be completed within strict timeframes such as an assembly line" and that she could only "have occasional interaction with supervisors and co-workers but no tandem tasks" and could have "no interaction with the general public." R. 21. In other words, even if the ALJ had afforded more weight to Dr. Fabiano's opinion, that would not have altered the ALJ's conclusion with respect to plaintiff's disability because Dr. Fabiano—just like the ALJ—ultimately concluded that plaintiff had no more than moderate limitations across the Paragraph B Criteria. *See Porteus v. O'Malley*, No. 23-969, 2024 WL 2180203, at *3 (2d Cir. May 15, 2024) (summary order) ("We have consistently held that moderate limitations in . . . mental functional capacities do not prevent individuals from performing unskilled work."); *Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *2 (2d Cir. Dec. 28, 2023)

(summary order) ("[T]he ALJ explicitly found that [the plaintiff] had moderate limitations in [the Paragraph B Criteria]. . . . [I]t is well-established that such moderate limitations do not prevent individuals from performing unskilled work.").

Thus, any error with respect to weighing Dr. Fabiano's opinion was harmless, and remand is also not warranted on this independent ground. *See Caci v. Comm'r of Soc. Sec.*, No. 18-cv-06533, 2020 WL 43512, at *5 (W.D.N.Y. Jan. 2, 2020) (explaining that medical source's statement that the plaintiff's lifestyle "would involve only sedentary activities, appear[ed] to be consistent with the assessed RFC for sedentary work, with additional limitations," and thus, "any error caused by the ALJ's failure to address these statements by [the medical source] was harmless"); *see also Skupien v. Colvin*, No. 13-cv-00403, 2014 WL 3533425, at *4 (W.D.N.Y. July 16, 2014) ("[C]ourts have found an ALJ's failure to consider a medical source's opinion to be harmless error where an analysis of weight by the ALJ would not have affected the outcome.").

### iii. Non-Examining Consultants

Two state agency consultants—Drs. Gilford and Anderson—also provided opinions on plaintiff's limitations stemming from her mental health impairments. In a May 2, 2023 administrative finding, Dr. Gilford examined plaintiff's file and concluded that plaintiff had a moderate impairment in managing emotions, and, accordingly, "may have difficulty adapting to change and also in understanding and carrying out detailed and complex instructions." R. 75. Dr. Gilford concluded that plaintiff was "capable of performing simple work and is able to understand, remember, and carry out simple instructions, and maintain a reasonable pace." R. 75. The ALJ found this opinion to be "persuasive" because it was consistent with the medical evidence, supported by plaintiff's treatment records and her "complaints of difficulty managing her mood," R. 24, and supported by the

26

findings from Dr. Fabiano's consultative examination—specifically plaintiff's "impaired attention and concentration and difficulty with memory." R. 24. In a September 7, 2023 administrative finding, Dr. Anderson concluded that plaintiff had moderate limitations across three of the Paragraph B Criteria, but that she only had a "mild" limitation in her ability to "adapt or manage oneself." R. 96. Dr. Anderson concurred in Dr. Gilford's opinion that plaintiff was capable of performing simple work, and that she is able to understand, remember, and carry out simple instructions, and maintain a reasonable pace. R. 95. The ALJ found this opinion to be "partially persuasive" because it was "partially consistent" with the medical evidence. R. 24. The ALJ disagreed, however, that plaintiff had only a mild limitation in adapting or managing herself, because "the claimant had a documented difficulty managing her mood," and, thus, had a more severe—i.e., moderate—impairment. *See* R. 24.

Plaintiff raises two purported deficiencies with the ALJ's evaluation of these opinions. First, plaintiff points out that both administrative findings were rendered at a time when plaintiff's file "included treatment records only through May 2023." Mot. 8. And according to plaintiff, her condition deteriorated after May 2023 as reflected by subsequent treatment records. *See* Mot. 8. Thus, in plaintiff's view, these opinions were less persuasive in light of the additional records in plaintiff's file and, to the extent the ALJ did not find them to be less persuasive, she should have "explain[ed] why that was not the case[.]" Mot. 8. Second, because neither Dr. Gilford nor Dr. Anderson examined plaintiff, their opinions, "standing alone, are not substantial evidence." Mot. 8 (citing *Goggins v. Kijakazi*, No. 23-cv-00285, 2024 WL 1259356, at *4 (E.D.N.Y. Mar. 25, 2024)).

27

Both arguments fail to demonstrate that the ALJ's evaluation was not supported by substantial evidence. At the outset, "[a] medical opinion does not become stale merely because it pre-dates additional evidence in the record." *Marsh v. Berryhill*, No. 16-cv-00727, 2018 WL 5880928, at *4 (W.D.N.Y. Nov. 10, 2018) (citing *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. June 15, 2016) (summary order)); *see also Carthron-Kelly v. Comm'r of Soc. Sec.*, No. 15-cv-00242, 2017 WL 9538379, at *4 (N.D.N.Y. Sep. 25, 2017) ("[T]he addition of subsequent medical records does not automatically render a prior opinion insufficient."). Indeed, a medical opinion "retains its persuasive value so long as the additional evidence does not raise doubts as to the reliability of the opinion or differ materially from the evidence originally considered." *Linda G. v. Comm'r of Soc. Sec.*, No. 21-cv-00048, 2022 WL 1845599, at *11 (D. Vt. June 3, 2022). Here, plaintiff fails to explain how any of the subsequent evidence casts doubt on the reliability of the prior administrative findings or demonstrates that they materially differ from the evidence in plaintiff's file at the time the findings were rendered. For example, plaintiff cites to various treatment records from the fall of 2023 in support of her assertion that plaintiff's condition "deteriorated after May 2023." Mot. 8.[5] To be sure, some of these records indicate that plaintiff reported experiencing symptoms such as insomnia, anxiety, depression, and paranoia at appointments dated after Drs. Gilford's and Anderson's

---

[5]     To the extent plaintiff argues that plaintiff's condition was worsening after the consultants rendered their findings, Mot. 8, the Court simply notes that there is conflicting evidence on this point. For example, the last-in-time treatment record from Dr. Banez dated November 9, 2023 indicates that plaintiff "[r]eport[ed] she is stable with her medications[,] [s]he is calm[,] [s]he denies any current mood or psychotic symptoms," and that she "is able to take good care of her two children." R. 615. And because it is up to the ALJ to weigh conflicting evidence, this argument does not warrant remand. *See Moshier v. Comm'r of Soc. Sec.*, No. 06-cv-00748, 2009 WL 1347196, at *12 (N.D.N.Y. May 13, 2009) ("It is the responsibility of the ALJ, not the court, to weigh conflicting evidence.") (citing *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)).

administrative findings. *See* R. 588, 592, 597–98. But none of these symptoms materially differ from the symptoms and diagnoses in plaintiff's file at the time of the consultants' findings; in fact, most were expressly referenced. *See* R. 76 (Dr. Gilford's review of plaintiff's file noting that plaintiff had previous hospitalizations "for panic attacks, paranoia anxiety and depression" and that at various telehealth visits plaintiff "report[ed] . . . anxiety and sleep disturbance"); *see also* R. 95 (Dr. Anderson's administrative finding noting the same).

In any event, the ALJ's decision indicates that she accounted for the subsequent records in evaluating the persuasiveness of Drs. Gilford's and Anderson's opinions. Specifically, she evaluated the consistency of those opinions against the record as a whole. *See* R. 24 (finding Dr. Gilford's opinion persuasive because it was "supported by the record, including the claimant's ongoing treatment for her mental health impairments and her complaints of difficulty managing her mood"). In fact, the ALJ discounted the persuasiveness of Dr. Anderson's opinion because it was only "partially consistent with the medical evidence" and was not fully consistent with plaintiff's "documented difficulty managing her mood," R. 24, including plaintiff's testimony at the Hearing and treatment records where plaintiff reported feeling "stressed," "anxious, and "hypervigilant," R. 23, all of which post-dated Dr. Anderson's opinion.

Plaintiff's argument that "opinions from non-examining consultants, standing alone, are not substantial evidence," Mot. 8, is plainly without merit. For one, it is not "per se legal error in finding the opinion of a non-examining source more persuasive than an examining source." *David W. T. v. Comm'r of Soc. Sec.*, No. 20-cv-01638, 2022 WL 3927887, at *4 (W.D.N.Y. Aug. 31, 2022); *see Parent v. O'Malley*, No. 23-917, 2024 WL 3342463, at *1–2 (2d Cir. July 9, 2024) (summary order) (finding that the ALJ did not

act improperly when finding the opinions of non-examining consultants more persuasive than examining consultants). More importantly, the ALJ did not simply rely on the opinions of non-examining consultants in support of her disability determination. She also relied on (1) the opinion of a consultative examiner who *did* examine plaintiff, *see* R. 24; (2) treatment records and medical evidence showing that plaintiff was "able to function outside her home and . . . able to attend to all self-care tasks independently," R. 21; and (3) plaintiff's Hearing testimony at which she testified as to her daily activities of living, R. 20. Put simply, the ALJ's decision did not rest on "opinions from non-examining consultants, standing alone[.]" Mot. 8.

*    *    *

In sum, the Court finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's evaluation of the medical opinion evidence. Therefore, plaintiff's motion for judgment on the pleadings on this ground must be denied.

### B.  *The ALJ Properly Evaluated Plaintiff's Subjective Statements*

Plaintiff also takes aim at how the ALJ evaluated plaintiff's subjective statements concerning her pain. When determining a claimant's RFC, the ALJ "is required to take the claimant's reports of pain and other limitations into account." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 416.929). Still, the ALJ need not "accept the claimant's subjective complaints without question; [s]he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id.* SSA regulations provide for a two-step process to assess the credibility of a claimant's testimony. First, the ALJ determines whether the claimant's impairment "could reasonably be expected to produce the symptoms alleged"; second, the ALJ

30

determines whether and to what extent the claimant's reported symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Colombia B.N. v. Comm'r of Soc. Sec.*, No. 21-cv-10622, 2023 WL 358599, at *5–6 (S.D.N.Y. Jan. 23, 2023).

The ALJ followed that two-step process here. First, "[a]fter careful consideration of the evidence," the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." R. 22. However, at the second step, the ALJ found that plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." R. 22. Specifically, the ALJ set forth a detailed account of plaintiff's treatment notes, including her appointments and mental examinations, from January 2023 through November 2023. R. 22–23. The ALJ pointed out various statements from plaintiff within those notes in which plaintiff "[d]enied any mood or psychotic symptoms," and that otherwise reflected that plaintiff's "psychiatric symptoms had diminished and stabilized." R. 23. Additionally, the ALJ noted that plaintiff testified at the Hearing that she was "able to conduct self-care tasks, care for her grandparents, and provide childcare." R. 25. On this basis, the ALJ reasoned that plaintiff's statements concerning the limiting effects of her symptoms were not entirely consistent with the record. R. 22.

Plaintiff lodges a largely cursory argument as to why this evaluation was not supported by substantial evidence. Relying on her points "discussed at length" as to the ALJ's evaluation of the medical opinion evidence, plaintiff contends that "the ALJ erroneously rejected consistent and well-supported mental limitations identified by treating and examining mental health specialists that support a determination of

disability for [p]laintiff," and argues that this "rationale applies with [equal] force to [plaintiff's] testimony [as] to the medical opinion evidence." Mot. 11. Plaintiff also argues that the ALJ could not reject plaintiff's allegations "solely because the available objective medical evidence does not substantiate the claimant's statements." Mot. 11 (quoting 20 C.F.R. § 404.1529(c)(2)).

Neither argument carries weight. Plaintiff appears to argue that the ALJ's assessment of plaintiff's subjective statements was necessarily erroneous because the ALJ "rejected" the "mental limitations" identified by Drs. Banez and Fabiano. *See* Mot. 11. But as set forth above, the ALJ did not err in weighing either of those medical opinions. *See* supra Section III.A. Moreover, the ALJ did not reject Dr. Fabiano's opinions concerning plaintiff's mental limitations. In fact, she found his opinion to be partially persuasive and adopted many of the same conclusions as to the severity of plaintiff's limitations with respect to the Paragraph B Criteria. *See* R. 24, 517. Nor did the ALJ reject plaintiff's statements "solely" because objective medical evidence was inconsistent with those statements. Indeed, the ALJ relied on plaintiff's other subjective statements concerning her symptoms as reflected throughout her treatment notes and her testimony at the Hearing concerning her daily activities of living. *See* R. 22–24. Once more, although plaintiff may disagree with how the ALJ discounted her statements concerning the intensity or severity of her symptoms, this disagreement is not grounds for remand. *See Linser-Parrinello v. Colvin*, No. 13-cv-04585, 2015 WL 1529833, at *12 (E.D.N.Y. Mar. 31, 2015) ("Just because [a] [p]laintiff disagrees with the ALJ's analysis of the evidence does not mean the ALJ improperly assessed the [p]laintiff's credibility."); *see also Taveras v. Comm'r of Soc. Sec.*, No. 22-cv-10825, 2024 WL 687912, at *8 (S.D.N.Y. Feb. 17, 2024) ("An ALJ's evaluation as to the claimant's subjective statements about their

32

symptoms and resulting limitations is entitled to deference by a reviewing court.”);

*Pardee v. Astrue*, 631 F. Supp. 2d 200, 220 (N.D.N.Y. 2009) (“[A]n ALJ retains the discretion to evaluate a claimant’s subjective testimony, including testimony concerning pain.”).

## CONCLUSION

For the reasons stated above, plaintiff’s motion is **DENIED** and the Commissioner’s cross-motion is **GRANTED**. The Clerk of Court is respectfully directed to enter judgment and to close the case.

**SO ORDERED.**

_/s/ Natasha C. Merle_
NATASHA C. MERLE
United States District Judge

Dated:   March 25, 2026
Brooklyn, New York